RECEIVED
JAN 2 0 2026
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

United States District Court
for the Southern District of Iowa

| | |
|---|---|
| United States of America<br>Plaintiff<br><br>v.<br><br>Approximately $24,488 in U.S. Currency and a Gold Necklace and Pendant | Civil No. 3:25-CV-00133 |

# Claimant's Verified Claim
## (pursuant Supplemental Rule 5G(5)(a)(ii)

Claimant pro se, Roberto Esquivias-Sandoval, files this Verified Claim, in order to avoid forfeiture of the property seized in criminal case no.: 3:22-cr-00114-SMR-2 and to inform the Court of his interest in the items listed below. To show good cause, Esquivias-Sandoval states:

1. On July 25, 2025 the Federal Bureau of Investigation sent Esquivias-Sandoval a Notice of Seizure of Property regarding two specific items seized during the arrest of his instant offense (Gold Necklace and Pendant, 23-FBI-000616; $24,488 USC, 23-FBI-000617). See page 3 of 3 of Notice of Seizure of Property, attached.

2. On August 27, Esquivias-Sandoval filed an Administrative Forfeiture with the FBI claiming interest ion the two items. See Administrative Forfeiture Forms, attached.

3. In Section 3 of the form - Interest in Property - Esquivias-Sandoval states that:

a) "[I have] valid, good faith and legally recognizable interest in the Gold Necklace and Pendant because these items were rightfully purchased for [me] by [my] mother from a store in Rockford, IL in the year of 1993 and had been in my] possession until the date of its confiscation"; and

b) "[I have] a valid, good faith and legally recognizable interest in the $24,488 USC because my mother gave me the loan for the amount listed above to help me out for such things as bills, purchase a new vehicle, etc. This cash loan was put into a safety box. This cash loan was in my possession until the date of confiscation."

/Id.

4. In that same section, Esquivias-Sandoval stated his interest in the forfeited asset(s), explaining:

a) "the picture [provided was] taken of me around 1998 shows me wearing the jewelry in question to support my interest in the gold necklace and pendant by providing evidence that they have been in my possession long before my instant federal indictment and date of confiscation"; and

b) "my mother and written affidavit to confirm that she indeed loaned me the cash amount of $24,488 for the purpose stated above. As of [the date of] (8/27/25), I [had] not received the affidavit to file as a document in support for this claim. To meet the stated deadline, this claim is being filed without the document, however I respectfully request to reserve the right to submit the affidavit once it arrives to help prove that the cash loan was rightfully in my possession before my instant federal indictment and fate of confiscation."

/Id.

5. Esquivias-Sandoval's biological mother had attempted to send her Affidavit in Support in August but was rejected by his facility on August 14 for not meeting mailroom policy criteria. It finally reached Esquivias-Sandoval on October 2, where on October 5 he sent a copy of the affidavit with a letter explaining the delay to the FBI to file with his Administrative Forfeiture Claim. <u>See</u> Affidavit and Letter, attached.

6. In Esquivias-Sandoval's biological mother's affidavit, she elaborated (to the best of her recollection) the origin of the necklace and pendant.

7. On November 28, the Government filed its Verified Complaint for Forfeiture in Rem with this Court, alleging that Esquivias-Sandoval had no interest in the listed property. In their document was a breakdown of the confiscated money taken from Esquivias-Sandoval's residence in Rockford consisting of $23,045 found in a safebox; $143 found in a wallet; and $1,300 found in a black duffle bag. Escamilla (BOP #89056-510) is the other identified party in this forfeiture motion. See pages 1 and 16 of the Government's Verified Complaint.

8. Esquivias-Sandoval, to the best of his recollection, remembers his adoptive mother (biological grandmother) loaning him a cash sum of around $18,000-$22,000 given to him over two transactions that year. Some of the cash was spent to pay for expenditures cited in Esquivias-Sandoval's filing to the FBI. Esquivias-Sandoval's adoptive mother confided to him over the phone that despite her ability to prove that she was able to provide him with such a substantial loan at the time it was requested, Ms. Esquivias-Sandoval worries about retaliation from the government (further elaborated in Esquivias-Sandoval's Affidavit in Support, ¶10). Therefore, she is not willing to provide an affidavit to substantiate his claim to the money.

9. Now with the breakdown of the confiscated moneys, Esquivias-Sandoval wishes to (in this Verified Claim) amend what he is claiming concerning the amount of confiscated cash. Esquivias-Sandoval knows he was never in possession of a black duffel bag and his wallet was confiscated from him during the raiding of the Rockford residence and so believes that the $1,300 and $143 found in both the duffel bag and wallet belongs to Edwin Munoz, the remaining roommate at the Rockford residence after Escamilla moved out and

relocated to California somewhere between February and March, where he was arrested. Therefore, at most Esquivias-Sandoval may have an interest in $23,045 of the funds.

Esquivias-Sandoval attests and declares under penalty of perjury that his claim is not frivolous and the information provided in support of my claim is true and correct to the best of his knowledge and belief under 18 U.S.C. §983(h); 1001; 1621, and 28 U.S.C. §1746.

Executed this 12 day of January, 2026.

Roberto Esquivias-Sandoval

## Certificate of Service

I thereby certify that on this 13 day of **Jan**, 20**26** I placed with staff noted below my first class, postage prepaid envelope addressed to:

**Clerk of Court**
**United States District Court**
**for the Southern District of Iowa**
**Davenport Division**
**131 E. Fourth St.**
**Suite 150**
**Davenport, IA 52801**

containing my **Claimant's Verified Claim**
for outbound legal mail with:

☒ A.M. Legal Mail, or

☐ Unit Mail Box because a.m. legal mail was not available to me, specifically________________________________________________________________________________________________________________________________

Note: A.M. Legal mail is the designated legal mail system, but unit mail is used as the alternate mail drop as it is the regular institution mail.

**PLEASE NOTE:** In the interest of efficiency, the Clerk is respectfully requested to **SERVE**, via the ECF system, ALL PARTIES not listed above.

Further, I request the Court clerk **FILE** the included motions and documents under the "Prisoner Mailbox Rule" on the **DATE** noted above, pursuant Houston v. Lack, 478 U.S. 266, 267 (1988). Sworn as true and correct under pains and penalties of perjury. Executed on the above noted date under 28 U.S.C. §1746.

[signature]
Roberto Esquivias-Sandoval

Roberto Esquivias-Sandoval
28686-510 Unit B
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

UNITED STATES OF AMERICA FOREVER/USA

UNITED STATES OF AMERICA FOREVER/USA

UNITED STATES OF AMERICA FOREVER/USA

LEGAL MAIL

Clerk of Court
United States District Court
for the Southern District of Iowa
Davenport Division
131 E. Fourth St.
Suite 150
Davenport, IA 52801

⇔28686-510⇔
Clerk Of Court
131 E 4TH ST
Davenport, IA 52801
United States