United States District Court
for the Southern District of Iowa

| | | |
|---|---|---|
| United States of America<br>Plaintiff<br><br>v.<br><br>Approximately $24,488 in U.S. Currency and a Gold Necklace and Pendant | ) | Civil No. 3:25-CV-00133 |

# Claimant's Verified Answer to Government's Forfeiture Complaint (under Fed.R.Civ.P. 12(b))

Claimant pro se, Roberto Esquivias-Sandoval, files this Answer to the Government's Forfeiture Complaint of the property seized in criminal case no. 3:22-cr-00114-SMR-2. After filing his Verified Claim via Prisoner Mailbox Rule on January 13, 2026, Esquivias-Sandoval answers to and alleges the Government's Verified Complaint (Doc. 1, "Complaint") as follows:

## A. Defense's Statute of Limitations Requires Complaint to be Dismissed

As outlined in Esquivias-Sandoval's included Motion to Dismiss Government's Verified Complaint, the Government's claims fail based on the timeline of the alleged criminal conduct pursuant 19 U.S.C. §1621, barring any claim it has on the forfeited property under 21 U.S.C. §881(a)(6). <u>See</u> included Motion to Dismiss. However, in the event the Court denies or otherwise holds the Motion to Dismiss, Esquivias-Sandoval files the Verified Answer.

B. Defendant in Rem

Esquivias-Sandoval agress with ¶¶'s 3(b), 4, and 5 of the Government's Verified Complaint. Esquivias-Sandoval's denies ¶3(a) of the Complaint because in his Verified Claim, he expounded on the need to correct the Government's presumptive aggregation of all of the confiscated monies found in the Rockford residence, reducing Esquivias-Sandoval's initially purported amount of $24,488 to $23,045. See Verified Claim at ¶¶'s 7-9 for details.

C. Jurisdiction and Venue

Esquivias-Sandoval agrees with ¶¶'s 6 and 7 of the Government's Verified Complaint.

D. Applicable Statutes

Esquivias-Sandoval agrees with ¶¶'s 8 through 16 of the Government's Verified Complaint.

## Argument

A. Necklace and Pendant

In Esquivias-Sandoval's Administrative Forfeiture, he informed the FBI that the confiscated necklace and pendant (see ¶95 of the Government's Verified Complaint) was purchased by his biological mother, Librada Trujillo, as a personal gift in 1993. See page 3 of Esquivias-Sandoval's Administrative Forfeiture. This was sworn to under perjury by Ms. Trujillo, notarized, and submitted in order for Esquivias-Sandoval to show interest in the property

(see Notarized Letter) as acknowledged by the Government (see ¶¶'s 110 and 115 of Government's Verified Complaint, Doc. 1 "Complaint"). Esquivias-Sandoval also provided a picture of him wearing the necklace and pendant in 1998 as further proof of interest. See 1998 picture; see also ¶110 of Complaint.

The Government solely relies on Esquivias-Sandoval's alleged 1993-1994 criminal activity to speculates that proceeds from such a venture would allow for him to purchase the jewelry in question.

As Esquivias-Sandoval's purported criminal conduct has no relation to his 2024 conviction, the Government is illegally seizing property that is not part of the underlying, or instant, offense. See United States v. Twenty-Seven Parcels of Real Property, 236 F.3d 438, 440 (8th Cir. 2021).

For this reason, the Court should deny the Complaint and order the custodial agency in possession of the necklace and pendant to return the property to Esquivias-Sandoval's appointed returneee, cited in his Affidavit in Support.

B. The Confiscated $23,045 in Cash

As was elaborated in Esquivias-Sandoval's Verified Claim, due to the Government's careful delineation of where the cash found, Esquivias-Sandoval is now able to identify what part of the confiscated monies he has no reasonable basis to claim.

The Government provided nothing in their Verified Complaint that they could easily identify the $23,045 as funds used or intended to be used to facilitate illegal drug activity. Though Esquivias-

Sandoval knows that discovery would show that his adoptive mother was capable of providing him the above mentioned loan, his mothers (both adoptive and biological) hold concerns about government retaliation against their family over the matter. See Verified Claim at ¶8; See also Declaration at ¶10. Because of this, Esquivias-Sandoval wishes to forfeit any interest or claim over the $23,045 of the Defendant in Rem.

This still leaves $1,443 that has no criminal affiliation attached to it and Esquivias-Sandoval believes belongs to Edwin Munoz. The manner of storage ($23,045 in the safebox versus $1,300 in the black bag) implies two sources for the funds.

As Edwin Munoz was never tied to, accused of, indicted, charged, or sentenced to any of the criminal conduct relating to Esquivias-Sandoval or the Rockford residence, and Escamilla had moved out of the residence 7 months prior, all unclaimed funds, by proxy, would belong to Mr. Munoz. Unless the Government can succinctly connect (through serial number or other trusted and used identifiable means) the remaining $1,443 to Esquivias-Sandoval's illegal activity, Mr. Munoz should be given an opportunity to claim the funds, should he choose to. Esquivias-Sandoval respectfully requests that Mr. Munoz be notified of this Court's ruling, once made, concerning the uncontested portion of the $24,448, allowing for such an opportunity to claim it to occur.

C. Count One Forfeiture under 21 U.S.C. §881(a)(6)

Ultimately, the Government cannot tie in the necklace and pendant in any supportable way to the instant criminal conviction stemming from the charged conduct starting in 2021. Any attempt to do so is speculation, if not fabrication, and no admissible proof is available to substantiate the Government's claims the necklace and pendant were connected to the instant conduct.

Thus, the necklace and pendant does not constitute things of value furnished in exchange for controlled substances in violation of the Controlled Substance Act, including but not limited to 21 U.S.C. §841, 843, and 846. As a result of the foregoing, the Defendant Property is not forfeitable to the United States and the Claimant respectfully requests the forgoing necklace and pendant be returned and any other applicable relief Esquivias-Sandoval is entitled to under applicable law.

RESPECTFULLY SUBMITTED THIS 28 DAY OF JANUARY, 2026.

[signature]
Roberto Esquivias-Sandoval

# Certificate of Service

I thereby certify that on this 29 day of Jan, 20 26 I placed with staff noted below my first class, postage prepaid envelope addressed to:

Clerk of Court
United States District Court
for the Southern District of Iowa
Davenport Division
131 E. Fourth St.
Suite 150
Davenport, IA 52801

containing my **Motion to Dismiss on Statute of Limitation Grounds** for outbound legal mail with:

- [x] A.M. Legal Mail, or
- [ ] Unit Mail Box because a.m. legal mail was not available to me, specifically ______________________________

Note: A.M. Legal mail is the designated legal mail system, but unit mail is used as the alternate mail drop as it is the regular institution mail.

**PLEASE NOTE:** In the interest of efficiency, the Clerk is respectfully requested to **SERVE**, via the ECF system, ALL PARTIES not listed above.

Further, I request the Court clerk **FILE** the included motions and documents under the "Prisoner Mailbox Rule" on the **DATE** noted above, pursuant Houston v. Lack, 478 U.S. 266, 267 (1988). Sworn as true and correct under pains and penalties of perjury. Executed on the above noted date under 28 U.S.C. §1746.

[signature]
Roberto Esquivias-Sandoval

United States District Court
for the Southern District of Iowa

| | | |
|---|---|---|
| United States of America<br>Plaintiff<br><br>v.<br><br>Approximately $24,488 in U.S. Currency and a Gold Necklace and Pendant | ) | Civil No. 3:25-CV-00133 |

# Motion to Dismiss
## on Statute of Limitation Grounds
## (under Fed. R. Civ. P. Rule 12(b)(6) and 21 U.S.C. §881(d))

Claimant pro se, Roberto Esquivias-Sandoval, respectfully requests the Court to dismiss the action because the untimely complaint fails to state a claim against the Defendant in Rem on which relief may be granted.

It appears on the face of the complaint that the right of action set forth regarding the gold necklace and pendant in question did not accrue within the tightly defined time limitation that statute permits.

The Government's Complaint are firmly grounded in their allegation that Esquivias-Sandoval was "associated with illegal drug trafficking, as a customer and/or dealer, since he was in his early teens, in approximately 1993-1994, involving marijuana and cocaine," (¶111 of Verified Complaint, Doc. 1 "Complaint"); and that Ms. Trujillo's letter "did not identify a date when the necklace with the pendant was alleged given." /Id. at ¶115. Yet, both parties agree on date of seizure (October 25, 2022) establishing the complaint

is untimely and any other claim becomes irrelevant. See 19 U.S.C. §1621.

In a civil forfeiture proceeding under 21 U.S.C. §881(a)(6) against property allegedly procured with proceeds from drug transactions where 21 U.S.C. §881(d) directs application requiring a

> such suit or action is commenced within five years after the time when the alleged offense was discovered, or in the case of forfeiture, within 2 years after the time when the involvement of the property in the alleged offense was discovered,"

19 U.S.C §1621. The Government is relying on, Esquivias-Sandoval's 1994 drug conduct to claim the necklace and pendant was purchased from drug proceeds. To be timely, their complaint would need to be filed no later than 1999, 26 years too late.

Statute language thus does not allow for confiscation of property beyond 5 years after the time when the alleged offense was discovered, in this case 1993-1994. See United States v. Four Tracts of Prop., 1995 U.S. APP. LEXIS 37072 at *1-3 (6th Cir. November 28, 1995) (Limitations period triggered by defendant 1973-74 drug trafficking, not his acquisition of property with those drug proceedings); see also United States v. 9167 Rocks Road, 1995 U.S. Dist. LEXIS 7843 at *6 (N.D. CA February 10, 1995) (Limitations period begins when government becomes aware of defendant's drug trafficking activity). The Government is decades too late to file a complaint on the necklace and pendant, as it was due in 1998-1999, 5 years after the Government's discovery of Esquivias-Sandoval's criminal activity in relation to the necklace and pendant.

The Government's interest in the necklace and pendant is also barricaded by the fact that Esquivias-Sandoval's criminal conduct in the early 90's has no relation to the instant criminal conduct (which started in either August of 2021 when USPIS identified two suspicious parcels, ¶19 of the Verified Complaint; or September of 2021 when the FBI began to coordinate investigations concerning the packages, ¶18 of the Verified Complaint) which led to his arrest in October of 2022.

19 U.S.C. §1621 also does not allow for the confiscation of property not in direct relation to the instant offense. "This language strongly suggest that "the alleged offense" means the underlying criminal offense. The timeliness of the instant forfeiture action, commenced under the prior version of the statute, is therefore to be measured from the date the government discovered the underlying criminal offense, not the date it discovered the property's alleged connection to that offense." See United States v. Twenty-Seven Parcels of Real Property, 236 F.3d 438, 440 (8th Cir. 2001). This is backed up by legislative history, where Representative Henry J. Hyde, Chairman of the House Judiciary Committee stated "[T]he courts have held under §1621 that the time begins to run as soon as the government is aware of facts that should trigger an investigation leading to discovery of the offense." See H.R. 1658, 106th Cong., 2d Sess.(2000).

Not only was the Government decades too late to file a complaint on the necklace and pendant, but they also admitted that the criminal conduct they are tying the property to is in no way part of the underlying criminal conduct of the instant conviction.

Even if the Government alleges that the statute of limitations should not start until "2 years after the time when the involvement of the property in the alleged offense was discovered", 19 U.S.C. §1621, they still missed the expiration date by 14 months, as 2 years from the date the involvement of the property was discovered would have been October 25, 2024. The Statute of Limitations bars the Government in every regard to their purported interest of the necklace and pendant.

For the reasons stated above, Esquivias-Sandoval respectfully requests that this Court grant this Motion to Dismiss the complaint against the necklace and pendant on the grounds that the Government is in violation of the statute of limitations, and that and order be issued to the agency in possession of Esquivias-Sandoval's necklace and pendant to return it to the authorized recipient named in his Declaration.

SUBMITTED THIS 28 DAY OF JANUARY, 2026.

[signature]

Roberto Esquivias-Sandoval

# Certificate of Service

I thereby certify that on this 29 day of Jan, 2026 I placed with staff noted below my first class, postage prepaid envelope addressed to:

**Clerk of Court**
**United States District Court**
**for the Southern District of Iowa**
**Davenport Division**
**131 E. Fourth St.**
**Suite 150**
**Davenport, IA 52801**

containing my **Declaration of Roberto Esquivias-Sandoval** for outbound legal mail with:

☑ A.M. Legal Mail, or

☐ Unit Mail Box because a.m. legal mail was not available to me, specifically______________________________________________________________________________________________________________________________________

Note: A.M. Legal mail is the designated legal mail system, but unit mail is used as the alternate mail drop as it is the regular institution mail.

**PLEASE NOTE:** In the interest of efficiency, the Clerk is respectfully requested to **SERVE**, via the ECF system, ALL PARTIES not listed above.

Further, I request the Court clerk **FILE** the included motions and documents under the "Prisoner Mailbox Rule" on the **DATE** noted above, pursuant Houston v. Lack, 478 U.S. 266, 267 (1988). Sworn as true and correct under pains and penalties of perjury. Executed on the above noted date under 28 U.S.C. §1746.

Roberto Esquivias-Sandoval

United States District Court
for the Southern District of Iowa

| | |
|---|---|
| United States of America<br>Plaintiff<br><br>v.<br><br>Approximately $24,488 in U.S. Currency and a Gold Necklace and Pendant | Civil No. 3:25-CV-00133 |

Declaration of Roberto Esquivias-Sandoval
in Support of his Verified Claim
and Verified Answer

This Declaration, by the pro se Claimant in the above captioned civil case, provides evidence supporting the claims of interest and factual allegations in his Verified Claim and Verified Answer (filed separately) requesting the return of the illegal confiscation of property relating to criminal case no. 3:22-CR-00114-SMR-2.

**The Declarant**

1. My name is Roberto Esquivias-Sandoval, I am over 21 years of age, and of sound mind. I have personal knowledge of the facts stated below. I am the pro se Claimant challenging the FBI's confiscation of my property as illegal. I am untrained and unskilled in the matters of the law.

2. I am currently serving a 158 month sentence for the above mentioned criminal case at FCI Sandstone in Sandstone, Minnesota.

3. I was born to Librada Trujillo in 1980 in Mexico.

4. My biological mother has been back and forth between the United States and Mexico since the 1970's. She decided to be in

Mexico when she have birth to me. My maternal grandmother (Aurora Esquivias-Sandoval) requested to gain legal custody over me so that my biological mother could come back to the U.S. in order to work and financially care for me. This happened when I was about 6 years old.

**Necklace and Pendant**

5. My biological mother bought necklaces and pendants for myself and my siblings (Marisol, Adrian, Veronica, and Vanessa) for our birthdays. All of the jewelry were purchased with cash from a store in Rcokford, Illinois. My particular necklace and pendant was one I picked out myself.

6. This necklace and pendant has been a prized possesion of mine ever since it was given to me and has been in my possession all of my life, up until I was 42 years old when I was arrested for the instant offense.

7. At no point prior to my current offense was the necklace and pendant ever taken from me by any law enforcement agency. This includes the time I had to serve an incarceration sentence in Illinois state prison from 2002-2010, where I was allowed to keep it in my possession while I was housed there; as well as when I was deported from the country for the first time.

8. During my October 25 arrest, the officer who was in charge of detaining me confiscated both my necklace and pendant as well as my wallet before I was handcuffed. I still believe that this was a breach in protocol, and a large part of why this necklace and pendant is currently subject to forfeiture despite my stated long-standing interest.

9. I am not allowed to have the necklace and pendant in my possession while still in federal custody. If the Court decides that my interest in the property is valid and grants forfeiture, I wish to have the necklace and pendant forwarded to my sister, Veronica Jackson, at the following address: 617 N. Independence Ave., Rockford, Illinois 61101; phone number: (773)372-9217.

**Funds Totaling $23,045**

10. Though I have personal knowledge of the facts surrounding the moneys found in the safebox; and both my biological and adoptive mother can provide testimony and proof towards the loan and the specific reasons it was given to me, they both fear retaliation from the government and its associated agencies. Specifically, my mothers are concerned of these agencies abilities to tarnish their reputation in the community they raised my siblings and I in; solely using their association or connection to me as a tie-in to my illegal criminal activity.

11. For these reasons, I wish to relinquish any interest or claim to any of the $23,045 found in the safebox in order to protect and respect my family's wishes to not be dragged into a situation they had zero part in.

**Remaining Funds ($1,433)**

12. From 2021-2022, Edwin Munoz, Axel Escamilla, and myself lived at the Rockford, Illinois address that was raided during my arrest.

13. After a traffic stop on January 25, 2022 (somewhere bewteen February and March), Axel moved out of the residence for fear of being more easily tracked during our continued illegal activity and relocated to California.

14. I was connected to Axel's criminal activity after he was arrested on June 16, 2022 in California, which was also used in tandem with then ongoing Illinois investigations for controlled buys.

15. By my October 25, 2022 arrest, Edwin Munoz and I were the only residents in the Rockford residence.

16. I know that I was never in possession, at any point, of a black duffel bag while living at the Rockford residence. I also know that my wallet was confiscated by the detaining officer (the same one who took my necklace and pendant) and so the wallet on record that was found in a bedroom could not be mine.

17. Because of these facts, the remaining $1,443 would have to belong to Edwin Munoz, who was not criminally indicted, charged, or sentenced in relation to mine or Escamilla's federal case out of the Southern District of Iowa.

I, Roberto Esquivias-Sandoval, by my signature below, swear and affirm under the penalties of perjury that the foregoing seventeen (17) paragraphs are true and accurate; not meant to mislead; and intended to aid the Court in establishing good cause for the relief requested in the Verified Claim and Verified Answer.

Executed this 28 day of January, 2026 under 28 U.S.C. §1746, Federl Self Notarization Statute.

Roberto Esquivias-Sandoval

# Certificate of Service

I thereby certify that on this 29 day of Jan, 2026 I placed with staff noted below my first class, postage prepaid envelope addressed to:

Clerk of Court
United States District Court
for the Southern District of Iowa
Davenport Division
131 E. Fourth St.
Suite 150
Davenport, IA 52801

RECEIVED
FEB 02 2026
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

containing my **Claimant's Verified Answer** for outbound legal mail with:

☑ A.M. Legal Mail, or

☐ Unit Mail Box because a.m. legal mail was not available to me, specifically ____________________

Note: A.M. Legal mail is the designated legal mail system, but unit mail is used as the alternate mail drop as it is the regular institution mail.

**PLEASE NOTE:** In the interest of efficiency, the Clerk is respectfully requested to **SERVE**, via the ECF system, ALL PARTIES not listed above.

Further, I request the Court clerk **FILE** the included motions and documents under the "Prisoner Mailbox Rule" on the **DATE** noted above, pursuant Houston v. Lack, 478 U.S. 266, 267 (1988). Sworn as true and correct under pains and penalties of perjury. Executed on the above noted date under 28 U.S.C. §1746.

Roberto Esquivias-Sandoval

Roberto Esquivias-Sandoval
28686-510 Unit B
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

UNITED STATES OF AMERICA FOREVER/USA
FREEDOM FOREVER/USA
UNITED STATES OF AMERICA FOREVER/USA
UNITED STATES OF AMERICA FOREVER/USA

LEGAL MAIL

Clerk of Court
United States District Court
for the Southern District of Iowa
Davenport Division
131 E. Fourth St.
Suite 150
Davenport, IA 52801

⇔28686-510⇔
Clerk Of Court
131 E 4TH ST
Davenport, IA 52801
United States