RECEIVED

SEP 09 2026

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

United States District Court
for the Southern District of Iowa

| | |
|---|---|
| United States of America,<br>Plaintiff,<br><br>v.<br><br>Approximately $24,488 in U.S. CURRENCY AND A GOLD NECKLACE AND PENDANT,<br>Defendants. | Civil No.: 3:25-cv-00133 |

Claimant's Response to Government's Motion For Partial Judgment on the Pleadings and Partial Voluntary Dismissal

**Introduction**

The Government asks this Court to close the book on $24,488 while treating a gold necklace--the one piece of family history Claimant has carried since he was a boy of thirteen, through a prior incarceration and a prior deportation, without a single officer ever taking it from him--as fair game to hold indefinitely. It asks the Court to accept its account of the facts as settled, when the Government itself cannot settle on how much money was found. (§II(A), infra.)

The Government moves quickly when it wants something. It indicted Claimant within fifteen days of the October 25, 2022 seizure at issue here. It seized, sued, and reduced a companion vehicle to a default judgment--start to finish--in about thirteen months. (§ III(B), infra.) But when 18 U.S.C. §983(a)(1) required it to notify Claimant of this seizure within sixty days, the Government

took nearly three years--the same office, the same seizure, the same investigation, moving at two very different speeds depending on whose interest was being served. The pattern hasn't stopped: Claimant's Motion to Dismiss has sat fully briefed since February 2026, over six months, without a ruling.

That same pattern shapes the relief the Government now seeks. It treats Claimant's withdrawal of part of his currency claim--a decision his family's his family's documented, Government corroborated fear of retaliation explains--as an admission he never made. (§II(A), IV, infra.) And it asks for finality on the currency while keeping the necklace claim open indefinitely. (§ III, V, infra.)

Claimant asks nothing unusual: that the Court resolve the fully-briefed Motion to Dismiss; that it hold the Government to the same 60-day clock it met for a vehicle seized the same day; and that when this case ends, it actually ends--judgement for the Government on the currency, and the necklace returned to the Claimant, with prejudice, so that neither party is still litigating this seizure years from now.

**I. The Court Should First Resolve the Pending Motion to Dismiss**[1]

This case has generated a substantial amount of briefing and more than one extension, and Claimant does not suggest that is unusual in litigation of this kind. However, one piece of that

---

1 - The Court's docket reflects that Claimant's Answer, his appended Motion to Dismiss, and his Declaration in Support--three documents each independently certified for service (ECF No. 7, at 6, 11, 16) --were docketed as a single entry, ECF No. 7. Claimant raises this only to ensure the record accurately reflects that these were filed as separate, indpendently-verified documents, and does not ask the Court to take any action on this point beyond what may be necessary to correct the docket's administrative record

briefing stands apart: Claimant's Motion to Dismiss (ECF No. 7. at 8-12), fully opposed by the Government (ECF No. 8) and fully replied tc by Claimant (ECF No. 9) as of February 13, 2026, resolves--or substantially narrows--nearly everything now before the Court regarding the necklace and pendant. If the limitations defense set out in that motion is correct, the bulk of what the Government seeks in Section V of its current brief regarding that property is unnecessary to reach at all.

The Government knows this motion exists; it wrote four pages opposing it. (ECF No. 8) Yet its Motion for Partial Judgment on the Pleadings and Partial Voluntary Dismissal does not mention it, does not ask the Court to resolve it, and does not explaining why the Court should reach new relief on the necklace before ruling on the defense already pending against it. (See generally ECF N0. 14; ECF No. 14-1.) Having engaged with the motion once, when engagement suited it postion, the Government has since proceeded as though the motion were not there. Claimant respectfully submits that judicial economy is better served by resolving the threshold, already-briefed limitations question first--a question the Government itself once thought worth four pages of opposition--before, or at the latest alongside, the relief requested in ECF No. 14. See Landis v. North American Co., 299 U.S. 248, 254 (1936) (a court's inherent authority extends to controlling "the disposition of the causes on its docket with economy of time

and effort for itself, for counsel, and for litigants"). Claimant renews and incorporates by reference the arguments made in his Motion to Dismiss (ECF No. 7, at 8-12) and reply (ECF No. 9), and develops them further in Section III, below.

**II. The Currency: Claimant's Withdrawal of a Claim is Not a Concession of the Government's Facts**

A. The Government conflates disclaimer with admission.

The Government asks this Court to treat Claimant's withdrawal of his claim to $23,045 as a concession that "there is no material issue of fact to resolve regarding Claimant's previously alleged interest in the Defendant's Currency."(ECF No. 14-1, at 2) That is not what happened, and the record does not support that characterization

Claimant's position on the currency has been consistent in substance even as it has narrowed in scope. In his Verified Claim, filed before the Government's Complaint disclosed how the seized currency broke down by location, Claimant estimated--from memory, without documentation--that he might be able to substantiate $18,000 to $22,000 of the funds. (ECF No. 3, para. 8.) Once the complaint specified the actual breakdown--$23,045 in a safe, $1,300 in a bag, $143 in a wallet (Compl. paras. 96-100)--Claimant was able to identify, with precision, exactly which portion he could support and which he could not. (ECF No. 3, para. 9). He withdrew his claim to the $23,045, not because he agreed it was drug proceeds, but because his family--whose assistance would be necessary to substantiate a legitimate source--was unwilling to provide evidence given a documented fear of government retaliation. (ECF No. 7,

at 4; Declaration para. 10.) That fear is not speculative, it is corroborated by the Government's own filings in a companion case. (§ IV, infra.)

A decision not to fight for money is not the same thing as an admission that the money was tainted. The Government cites no authority--because there is none--for the proposition that a claimant's withdrawal of a claim operates as a stipulation to the moving party's contested factual allegations. Withdrawal ends the dispute over entitlement to a specific sum; it does not convert everything the Government has alleged about that sum into an undisputed fact for purposes of Rule 12(c).

B. The Government's own account of the money has not been consistent.

The Government's insistence that nothing about the currency remains in dispute is difficult to reconcile with the Government's own record. In April 2023, in a related forfeiture action arising from the same search of the same residence, the Government swore that the search recovered "$24,488 in U.S. Currency." (4:23-cv-00139, ECF No. 2, para. 56.) Four months later, in the plea agreement resolving the related criminal case, the factual basis to which Claimant agreed identified "$22,000 in cash" found during the same search. (3:22-cr-00114, ECF No. 43, para. 8(q).) The complaint in this action, filed more that two years after that plea agreement, now offers a third figure: $23,045, $1,300, and $143, in three separate locations. (Compl. paras. 96-100.) Claimant does not raise this to re-litigate any specific sum--he has withdrawn his

claim to the largest of these figures and does not contest the remainder--but the Government's own inability to settle on a single account of its own search results is difficult to square with its position that nothing here is genuinely disputed.

C. No findings beyond a straightforward disposition are necessary or appropriate.

To the extent the Court is inclined to grant judgment on the currency, Claimant does not ask the Court to make , and respectfully submits it need not make, and findings regarding the source or character of the funds beyond what is necessary to enter judgment on Claimant's non-opposition. The remaining $1,443 is addressed separately, in Section IV, and Claimant takes no position on it in either direction.

### III. The Necklace and Pendant

A. The Government's own complaint places its necklace theory outside any limitations period.

The Government's theory of forfeiture as to the necklace and pendant does not rest on the 2021-2022 conspiracy that produced Claimant's conviction. It rests on something else entirely: th Government's allegation that Claimant "is believed to have been associated with illegal drug trafficking, as a customer or dealer, since he was in his early teens, in approximately 1993-1994." (Compl. para. 111.) That is the Government's chosen timeframe, alleged in its own words, in the very pleading now before the

Court. The necklace was purchased in 1993. (ECF No. 3, para. 3(a).) The Government's theory and its own timeline place the two events in the same year.

Forfeiture actions under 21 U.S.C. §881(a)(6) are subject to the limitations period set forth in 19 U.S.C. §1621, applicable here through 21 U.S.C. §881(d). That period runs from the discovery of "the alleged offense"--and in this Circuit, "the alleged offense" means the underlying criminal offense, not the later discovery of some property's connection to it. United States v. Twenty-Seven Parcels of Real Property, 236 F.3d 438, 440 (8th Cir. 2001). The Government cannot reach back three decades to an offense it has itself dated to 1993-1994, tie a piece of property to that offense, and then measure the limitations clock from 2022--the date it discovered the necklace, not he date it discovered the offense it now says justifies taking it. Section 1621 does not permit that sequence, and Twenty-Seven Parcels forecloses it directly.

The Government's opposition to the pending Motion to Dismiss did not dispute this rule. It argued instead that the timing question cannot be resolved on the pleadings because it does not "appear from the face of the complaining" when the relevant offense was discovered. (ECF No. 8, at 2 (citing Bishop v. DeLaval Inc., 466 F. Supp. 3d 1016, 1022 (W.D. Mo. 2020)).) That objection answers a different complaint than the one the Government actually filed. The date the Government relies on--1993-94--is not missing from the face if this Complaint; its alleged in it, by the Government, at para. 111. A limitations defense that depends entirely on a

date the moving party itself pled is, by definition, resolvable on the pleadings. The Government does not need discovery to tell it what year it already wrote in its own Complaint.

That objection sits uneasily with the rest of the Government's own brief. In the same filing where it insists the necklace's timing cannot be resolved without further factual development, the Government asks this Court to grant judgment on the pleadings--no discovery, no further record--on the currency. (ECF No. 14-1, at 2-7.) The Government cannot have it both ways: that the pleadings are too thin to decide a question resolved entirely by a date the Government itself alleged, yet thick enough to decide a question it now says requires no factual development at all. Having told this Court the pleadings could not answer the obvious question, the Government does not get to insist they conclusively answer the complex one. The Government's request that the necklace claim nonetheless survive without prejudice--preserving for itself the very finality it denies Claimant--is addressed further in § III(D) below.

B. The Government's own delay undercuts any claim that time was needed, and supports resolving this matter now.

Congress gave the Government sixty (60) days from the date of a seizure to notify the person from whom property was taken, 18 U.S.C. §983(a)(1)(A)(i). That clock can be displaced only if the Government, before it runs, obtains a criminal indictment that itself alleges the seized property is subject to forfeiture,

id. §983(a)(1)(A)(iii). No such allegation exists here. The indictment returned against Claimant on 11-09-2022--fifteen days after the seizure--charges seven counts and contains no forfeiture allegations of any kind, as to the necklace, the currency, or anything else. (3:22-cr-00114, ECF No. 18.) Nothing displaced the sixty-day clock. The Government simply let it run--and kept running it, for nearly three years, until it finally sent the required notice on 07-25-2025. (ECF No. 3, para. 1.)

The Government cannot credibly attribute that delay to the complexity of the investigation. It moved with real speed in every other aspect of this seizure. It obtained an indictment within fifteen days. (3:22-cr-00114, ECF No. 18.) In a companion forfeiture action arising from the same 10-25-2022 search--the civil forfeiture of a vehicle titled to Claimant's niece--the Government filed suit within six months and reduced the matter to a default judgment within thirteen. (4:23-cv-00119, ECF Nos. 2, 12.) And in that same companion complaint, filed in April 2023, the Government swore under oath to the precise figure it now treats as requiring further litigation here: "$24,488 in U.S. Currency." (4:23-cv-00119, ECF No. 2 para. 56.) The Government had the facts, had the figure , and had already committed both to a sworn pleading nearly two and a half years before it sent Claimant the notice that statute required in sixty days.

Claimant does not ask the Court to treat this delay as an independent bar to the Government's claim; no motion to

set aside a completed administrative forfeiture is before the Court, because none was ever entered. The delay is not irrelevant, however, to what the Court is being asked to do no. It is the clearest evidence in this record of an institution that acts quickly when it s own interest requires it and lets legal obligations sit untouched for years when no one is watching. That pattern bears directly on the relief discussed in §III(D), below: a Government that took thirty-three months to do what that statute gave it sixty days to do is not well positioned to ask this Court to leave its claim to the necklace open indefinitely, on the promise it will get around to litigating it eventually

C. The Necklace had been Claimant's since childhood, and no officer ever took it from him before now.

The record here is not complicated. Claimant's mother purchased the necklace and pendant in 1993, from a store in Rockford, IL, when Claimant was approximately thirteen years old . (ECF No. 3 para. 3(a).) He has had it in his possession continuously since--through a term of incarceration in Illinois from 2002 to 2010, and through a prior deportation--and no officer, in any of those encounters, ever took it from him. (Declaration para. 7.) It was seized for the first time in his life on 10-25-2022, when he was arrested. (Compl. para. 95.) A photograph already in the record, taken around 1998, shows him wearing it. (ECF No. 3, para. 4(a); Compl. para. 110.)

The Government does not dispute any of this directly. Instead, it notes that the notarized letter from Claimant's mother

"did not identify a date when the necklace with a pendant was alleged given," and expresses skepticism about a n affidavit obtained without further discovery. (Compl. paras. 113-115.) Claimant's mother's willingness to substantiate her own statement is not, on this record, in question--Claimant has represented that she remains available to provide further sworn testimony, including at a hearing, if the Court finds that necessary. What the Government has not done is identify any affirmative evidence--as opposed to skepticism about the completeness of Claimant's showing--that the necklace has any connection to drug proceeds at all. Thirty years of undisturbed possession, across multiple prior encounters with law enforcement, is not consistent with property the Government only now, for the first time, treats as forfeitable.

D. If the Government's own necklace claim is to be dismissed , it should be with prejudice.

The Government asks this Court to dismiss its own claim to the necklace and pendant under Rule 41(a)(2)--but only without prejudice, preserving its right to bring the same claim again at a time of its choosing. (ECF No. 14, para. 8.) Claimant does not oppose dismissal. He opposes leaving the door open.

Rule 41(a)(2) "implicitly permits the district court to dismiss an action with prejudice in response to to a plaintiff's motion for dismissal without prejudice." Jaramillo v. Burkhart, 59 F.3d 78, 80 (8th Cir. 1995). That authority is squarely presented here. The Government has now had this property, and this theory, for nearly four years. It has had the necklace itself since 10-

25-2022. It had its 1993-94 trafficking theory since it filed this Complaint. It has had a fully briefed limitations defense against that theory since February 2026. What is not had, at any point, is a reason to need more time, with §III(B)'s timeline showing an office capable of moving in weeks or months when it chooses to, forecloses any suggestion that more time is what this case actually requires.

A dismissal without prejudice would leave Claimant precisely where the Government's own conduct in this case has already shown him: subject to a claim the Government can revive whenever it decides the circumstances suit it, based on a theory it has not defended on the merits and a delay it has not explained. The Government asks this Court for finality on the currency it will receive. (ECF No. 14, para. 6.) Claimant asks for nothing more than the same finality on the property he will receive in return. If dismissal is the appropriate disposition of the Government's necklace claim--and Claimant submits that it is--it should be a dismissal with prejudice, and the necklace and pendant should be returned to Claimant, at the Government's expense, by insured, tracked mail to the recipient identified in his Declaration. (Declaration para. 9.)

## IV. The Family's Reluctance to Participate Further in this Litigation is Not Speculative

Claimant's decision to withdraw his claim to $23,045 rather than pursue affidavits from family members has already been explained: his mothers, both adoptive and biological, were

unwilling to provide sworn support given a documented concern about government retaliation against the family. (ECF No. 7, at 4; Declaration para. 10.) The Government's brief treats that reluctance as unexplained, and by implication, as evidence that nothing legitimate stood behind it. (ECF No. 14-1, at 3-4.) It is not unexplained. The Government's own sworn filings in a companion case show precisely where that concern comes from.

Elizabeth Trujillo, Claimant's niece, was the titled owner of a vehicle seized the same day as the property at issue here and separately pursued in a companion forfeiture action. (4:23-cv-00119, Compl. paras. 67-71.) Ms. Trujillo initially contested the administrative forfeiture of her vehicle. (4:23-cv-00119, Compl. para. 66.) She never filed a claim once the claim proceeded to this Court, and the vehicle was forfeited by default. (4:23-cv-00119, ECF No. 12.)

This is not a hypothetical fear Claimant has invoked to excuse an evidentiary gap. It is a documented outcome, in a related case, arising from this same investigation: a family member assisted Claimant in a small transaction, was told by the Government that doing so made her look complicite in a drug conspiracy, and ultimately walked away from asserting any claim at all. When Claimant's mothers decline to put their names on a sworn statement in this case, they are not behaving irrationally or concealing something. They are responding, reasonably, to something the Government has already shown this family it is willing to do.

**Conclusion**

The Government came to this Court asking to close the book on $24,488 while holding the door open, indefinitely, on a family heirloom Claimant has carried since he was thirteen years old--through a prior incarceration, a prior deportation, and every encounter with law enforcement before this one, none of which ever took it from him. Nothing in the record the Government has offered explains why that changes now.

What this record shows is an office that moves in days when indictment serves its purposes, in months when a companion case can be closed out quietly, and in years--or not at all--when the obligation runs the other way: toward telling Claimant what was taken from him, toward answering a motion that has sat fully briefed since February, toward settling on a single account of how much money it own search actually found. The Government does not get to invoke urgency and delay as it suits the moment and call the result an undisputed record.

Claimant is not asking this Court to referee every fact the Government has ever alleged. He has already withdrawn his claim to the larger portion of the currency, and he takes no position on the remainder. What he is asking for is what the Government itself is asking for on its own side of the case: closure. The Government should have its judgment on the currency it will receive. Claimant should have his necklace back--the one piece of his family's history that thirty years, two incarcerations, and a deportation never took from him--returned with prejudice, and returned for good.

**Relief Requested**

For the reasons set forth above, Claimant respectfully requests this Court to:

1. Resolve Claimant's Motion to Dismiss (ECF No. 7, at 8-12) as a threshold matter, and grant it as to the gold necklace and pendant;

2. In the alternative, or in addition, deny the Government's request to dismiss its claim to the gold necklace and pendant without prejudice, and instead dismiss that claim with prejudice;

3. Order that the gold necklace and pendant be returned to Claimant, at the Government's expense, by insured, tracked mail, to the recipient identified in Claimant's Declaration (Declaration para. 9);

4. Enter judgment for the Government on the $23,045 to which Claimant has withdrawn his claim, without further findings regarding the source or character of those funds beyond what is necessary to enter judgment on Claimant's non-opposition;

5. Enter no findings, and grant no relief, regarding the remaining 1,443, as to which Claimant takes no position; and

6. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this _____ day of August, 2026.

_______________________

Roberto Esquivias-Sandoval
Pro Se Claimant
#28686-510
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

## Certificate of Service

I thereby certify that on this 31 day of **August** , 2026 I placed with staff noted below my first class, postage prepaid envelope addressed to:

**United States District Court for**
**the Southern District of Iowa**
**Davenport Division**
**131 East Fourth Street, Suite 150**
**Davenport, IA, 52801**

containing my **Claimant's Response to Government's Motion for Partial Judgment on the Pleadings and Partial Voluntary Dismissal** for outbound legal mail with:

☒ A.M. Legal Mail, or

☐ Unit Mail Box because a.m. legal mail was not available to me, specifically__________________________________________________

Note: A.M. Legal mail is the designated legal mail system, but unit mail is used as the alternate mail drop as it is the regular institution mail.

**PLEASE NOTE:** In the interest of efficiency, the Clerk is respectfully requested to **SERVE**, via the ECF system, ALL PARTIES not listed above.

Further, I request the Court clerk **FILE** the included motions and documents under the "Prisoner Mailbox Rule" on the **DATE** noted above, pursuant Houston v. Lack, **487** U.S. 266, 267 (1988). Sworn as true and correct under pains and penalties of perjury. Executed on the above noted date under 28 U.S.C. §1746.

[signature]
**Roberto Esquivias-Sandoval**

Roberto Esquivias-Sandoval
28686-510 Unit B
Federal Correctional Institution
P.O.Box 1000
Sandstone, MN, 55072-1000




⇔28686-510⇔
Clerk Of Court
131 E 4TH ST
Davenport, IA 52801
United States

LEGAL MAIL

United States District Court for
the Southern District of Iowa
Davenport Division
131 East Fourth Street, Suite 150
Davenport, IA, 52801